IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSEMARY SHIELDS, | : | |
| | : | |
| Plaintiff | : | No. 3: CV-07-417 |
| | : | |
| v. | : | (Vanaskie, J.) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant | : | |

MEMORANDUM

Plaintiff Rosemary Shields has brought this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the Commissioner of Social Security's decision denying her claim

for disability insurance benefits under Title II of the Social Security Act, ("Act"), 42 U.S.C. §§

401-433.  Magistrate Judge Mannion, to whom this matter had been referred, recommends

that Plaintiff's appeal be denied.  (Report and Recommendation, Dkt. Entry 14.)  Plaintiff

has objected to the Report and Recommendation, (Dkt. Entry 17), and Defendant has filed

a response to Plaintiff's objections.  (Dkt. Entry 18.)  Having reviewed the matter de novo,

I find that the denial of benefits is not supported by substantial evidence.  Accordingly, the

case will be remanded to the Commissioner for further consideration.

I.    BACKGROUND

A.  Procedural History

_____Plaintiff filed an application for disability benefits on April 15, 2005, with an alleged

onset date of December 11, 2004.  She alleged a post-thoracic compression fracture,

osteoporosis, severe back pain, and chronic obstructive pulmonary disease ("COPD").  (R.

31, 32, 43, 44.)  Plaintiff's application was initially denied and Plaintiff requested an

administrative hearing.  (R. 26, 28.)  A hearing took place on September 25, 2006, during

which the Administrative Law Judge ("ALJ") heard testimony from Plaintiff, who was

represented by the same counsel representing her in this appeal, and from a vocational

expert.  (R. 305-25.)  The ALJ issued an unfavorable decision on October 24, 2006.  (R.11-

20.)  Plaintiff's request for review was denied by the Appeals Council on February 7, 2007.

(R. 5-7.)  Thus, the ALJ's decision is the final decision of the Commissioner for purposes of

this matter.

Plaintiff brought this action on March 5, 2007.  (Dkt. Entry 1.)  On February 18, 2008,

Magistrate Judge Mannion issued a Report and Recommendation, proposing that the denial

of benefits be affirmed.  (Dkt. Entry 14.)  Plaintiff's objections to the recommendation were

filed on March 6, 2008, (Dkt. Entry 17), and Defendant's response was submitted on March

21, 2008.  (Dkt. Entry 18.)

B.  Factual History

Plaintiff was born on July 9, 1944, and was sixty-two years old at the time of the

ALJ's decision denying her disability benefits.  (R. 32.)  Plaintiff graduated high school and

completed one year of college.  (R. 50.)  Her past relevant work experience includes

employment as a customer service representative, an imaging specialist, an office clerk, a

personal care worker, and a billing and accounts receivable clerk.  (R. 52-61.)

In April 2003, Plaintiff presented to Tracey Galardi, M.D., with complaints of lower

back pain.  X-rays revealed a mild narrowing of the C5-6 and C6-7 disc spaces, and a

normal impression, otherwise.  (R. 88-90.)

On October 26, 2004, Plaintiff was admitted to Community Medical Center with

complaints of shortness of breath and chest pain.  Hospital records indicate that Plaintiff

also complained she had been suffering from depression for the preceding several months,

impacted by stressors including the placement of her mother in a nursing home, her son's

recent hospitalization, and the recent death of her daughter.  Impressions noted include

chest pain, acute coronary syndrome, acute bronchitis, possible depression, and likely

chronic pulmonary obstructive disease ("COPD") with acute exacerbation.  (R. 91-107.)

She was discharged on October 28, 2004.

On December 11, 2004, the alleged disability onset date, Plaintiff injured her back at

work while moving a forty-pound box.  (R. 44, 119, 130.)  Plaintiff was first treated for this

3

injury on December 13, 2004, when she presented to the emergency room with complaints

of back pain.  (R. 109-11.)  Plaintiff was diagnosed with a closed lumbar spine fracture and

prescribed Vicodin.  (Id.)

On December 27, 2004, X-rays revealed compression fractures at T8, L1, L2, and

L4.  Plaintiff was prescribed a soft lumbar support for external symptomatic relief and

Darvocet for pain.  (R.117.)  In early January 2005, Plaintiff received a lumbar support brace

for her compression fractures, and it was noted that Plaintiff "felt the relief immediately."

(R.112.)  On January 21, 2005, Plaintiff's follow-up revealed that she was "somewhat

improved," but still needed to take pain medication and "maintain a very minimal activity

level."  (R. 116.)  Records indicate diffuse tenderness in the paraspinal area, some

discomfort with flexion and extension, negative straight leg raising, normal motor and

sensation, symmetric reflexes, good distal circulation, and no skin changes.  (Id.)

On March 4, 2005, records indicate that, while there was "good overall healing of all

compression fractures," Plaintiff was still experiencing a "fairly limiting amount of pain" such

that "even light activities around the house go incomplete because she has to stop and lay

down or rest."  (R. 115.)  Records again indicate diffuse tenderness in the paraspinal area,

some discomfort with flexion and extension, negative straight leg raising, normal motor and

sensation, symmetric reflexes, good distal circulation, and no skin changes.  (Id.)  The office

note of Alan P. Gillick, M.D., indicates that Plaintiff was "taking a minimal amount of

medication as best she can." (Id.)

An MRI on March 23, 2005, revealed remote compression deformities at the T8, L1, L2, and L4 vertebral bodies.  No evidence of any significant posterior disc herniation or spinal canal stenosis was noted.  (R. 122-25.)  Degenerative changes were noted at the T2-3, T8-9, and T12-L1 levels.  (R. 161.)

On April 8, 2005, it was noted that she was "doing no better from a pain standpoint." (R.114.)  Water therapy was recommended and Plaintiff's treating physician, Dr. Gillick, an orthopedist, indicated that he still did not feel "that she is able to consider any type of work activity." (Id.)  Again, diffuse tenderness in the paraspinal area, some discomfort with flexion and extension, negative straight leg raising, normal motor and sensation, symmetric reflexes, and good distal circulation without any skin changes were noted.  (Id.)

On April 13, 2005, Dr. Thaddeus A. Piotrowski of Northeastern Occupational Medicine & Rehabilitation Center, P.C., noted that Plaintiff was able to reach about halfway between the knees and ankles, and that her lateral flexion, backward extension, and rotational movement were somewhat limited.  Plaintiff's gait was noted to be normal.  Dr. Piotrowski further noted that Plaintiff was "very frustrated with the continued pain she is having," that she stopped taking Ultracet because of gastrointestinal upset, and that Tylenol was not totally effective at relieving her pain.  (R. 126.)  He prescribed Darvocet, to be taken every 6 hours as needed for pain.  (Id.)

5

In a questionnaire completed on May 3, 2005, Plaintiff indicated she was experiencing "severe back pain" and breathlessness on a day-to-day basis. (R. 63.) She indicated that she could not lift or move anything weighing over one-and-a-half to two pounds. (Id.) With regard to her daily activities, Plaintiff noted she could not stand longer than two minutes to style her hair, and that she had difficulty walking the two blocks to the bus stop and up the hill to her house. (R. 64.) She indicated that she has had such severe pain after a trip to the bank that she had to lie down for the rest of the evening and could do very little the next day on account of her pain. (R. 65.) With regard to her hobbies, Plaintiff indicated she could garden with a "child's bamboo rake" for no more than a few minutes at a time and that she could no longer lift her sewing machine. (R. 64-65.) Plaintiff also noted that her difficulty preparing meals increased throughout the day, from breakfast to dinner, and that she needed to rest one elbow on the counter while cooking. (R. 64.) She indicated that she was unable to take out the trash, that she could use a self-propelled vacuum cleaner only if someone retrieved it for her, that she could not pick up the corners of a mattress to properly make a bed, that lifting wet jeans from the washer was too difficult, and that she could only lift one to four pieces of laundry at a time. (Id.) When grocery shopping, Plaintiff indicated she needed to lean on the shopping cart for support and could carry only two light bags at a time, which contained items like a loaf of bread or a box of cereal. (Id.) Plaintiff indicated she could climb the twelve steps to her house but needed to

6

stop and rest every three to four steps due to pain.  (R. 65.)  Plaintiff needed to rest every

ten to fifteen minutes while performing her daily activities and lie down in the late morning to

alleviate her pain.  (Id.)  Plaintiff also indicated she must lie down after ten to fifteen minutes

of sitting, due to pain.  (Id.)  However, Plaintiff indicated that she could shower and dress

herself without stopping to rest.  (R. 66.)  In describing her pain, Plaintiff attested that it felt

like "someone is sitting on my shoulders & the bones are touching," and that while her pain

was originally periodic, by the time of the questionnaire in May, 2005, it was more constant.

(R. 66-67.)  Plaintiff noted that only lying down alleviated her pain.  (Id.)  Pain was affecting

her concentration and interrupting her sleep.  (Id.)  Plaintiff indicated that she took pain

medication daily, including Darvocet up to three times per day.  (R. 68-69.)

On May 11, 2005, Mary Ryczak, M.D., a state agency physician, reviewed the

evidence of record and concluded that Plaintiff retained the residual functional capacity

("RFC") to perform a range of light work that involved frequently lifting and carrying ten

pounds, occasionally lifting and carrying ten pounds, standing or walking for up to six hours

in an eight hour workday, and sitting for up to six hours in an eight hour work day, with

normal breaks.  Dr. Ryczak also recommended Plaintiff avoid concentrated exposure to

fumes and odors.  (R. 147-55, 156.)  On the form completed by Dr. Ryczak, she

acknowledged that Dr. Gillick had concluded that Plaintiff could not work.  (R. 153.)  Dr.

Ryczak did not respond to the question asking for an explanation as to why Dr. Gillick's

7

conclusion was not supported by the evidence in the file, observing that the matter was "reserved to the Commissioner." (Id.)

On June 5, 2005, Plaintiff presented to the emergency room of Community Medical Center with shortness of breath. She was treated with oxygen, nebulizer therapy, and medication. She was discharged on June 10, 2005, in stable condition with AMD Home Health Service for oxygen. The diagnosis was acute exacerbation of COPD and bronchitis. (R. 221.)

Dr. Gillick observed on July 11, 2005, that Plaintiff had become "somewhat discouraged" and was feeling "more and more depressed." (R. 158.) Her X-ray on that date revealed a worsening of the upper compression and what Dr. Gillick believed to be a new compression at T7 or T8. (Id.) Although observing that Plaintiff "uses pretty minimal medication," he recommended increasing her Celebrex to twice per day, taking Ultracet "on a regular basis," and "using Darvocet as a supplement for pain." (Id.)

On August 8, 2005, Plaintiff presented to Dr. Gillick with complaints of lower back pain. Dr. Gillick opined that Plaintiff could not yet return to work and that "[s]he is still pretty much at a sedentary level of activity." (R. 157.) Dr. Gillick also reported that an MRI showed two new compression fractures of the thoracic spine, with no spinal cord or canal compromise. Upon examination, Dr. Gillick observed tenderness in the lower back, with normal reflexes and sensation. Negative straight leg raising was once again noted. (Id.)

8

Dr. Gillick referred Plaintiff to Joseph J. Chun, M.D., for a physiatric consultation.

In his report of November 18, 2005, Dr. Chun stated that he had observed a smooth and normal gait, mild to moderate tenderness in the lower lumbar region, slightly restricted lumbosacral range of motion, grossly intact lumbosacral stability, normal muscle strength and sensation in the extremities, no muscle atrophy, normal muscle tone, symmetrical and normal toe walking, and full range of motion in the hips and knees.  (R.189-91.)  He also found lumbar disc herniation at L5-S1, central, and at L4-5, left far lateral.  Dr. Chun indicated that, overall, Plaintiff's "pain is not improved and is worsening over the last few months."  (R. 190.)  He recommended a TENS unit and Lidoderm patch for low back pain, Skelaxin for muscle pain, and  Darvocet three times per day as needed.  He also concluded that Plaintiff's "no work status" should be continued "until her pain is better controlled."  (R. 191.)

On December 23, 2005, Dr. Chun noted that, although Plaintiff had been obtaining some relief from physical and aquatic therapy, her pain had started to increase.   (R. 187.)  He recommended that the TENS unit continue to be used and that Plaintiff start taking Tylenol #3 with codeine.  He recommended discontinuing the use of Darvocet as it was not helpful, but that Plaintiff continue to take Ultracet on an as-needed basis.  Finally, he recommended continuation of the no work status.  (Id.)

On February 1, 2006, Dr. Chun noted that Plaintiff continued to feel that physical and

aquatic therapy had been helpful and that Tylenol # 3 was having a "good benefit." (R.

184.)  Dr. Chun noted that her "pain continues to be the same in location, timing, and

quality." (Id.)  He recommended continuation of the same medication and treatment

regimen, and that Plaintiff remain in "no work" status.  (R. 185.)

From March 14, 2006, through March 17, 2006, Plaintiff was once again hospitalized

for chest pain and shortness of breath.  Again, she was treated with oxygen, a nebulizer, an

inhaler, and medication.  She was discharged in stable condition with diagnoses including

COPD with acute exacerbation, dehydration, and dysthymic disorder.  (R. 197-219.)

Plaintiff underwent a myocardial stress test on March 27, 2006, which was normal.  (R.

192.)

Commencing in March and continuing through July of 2006, Plaintiff underwent eight

acupuncture treatments.  Plaintiff pursued acupuncture after a Bilateral L5 transforaminal

epidural steroid injection on February 14, 2005, proved ineffective and increased her pain.

(R. 167-75.)

Plaintiff continued to treat with Dr. Chun from March 2006, through June 2006.  At

the March visit, Dr. Chun recommended that Plaintiff start taking Avinza and Vicodin for

pain relief, as Tylenol #3 was no longer effective.  (R. 183.)  At an examination on April, 12,

2006, Plaintiff told Dr. Chun that she was taking Avinza and Vicodin twice per day, and that

she had been to see a psychologist.  He recommended that she continue to see the

psychologist and that a Medrol Dose Pak be used for severe pain.  (R. 181.)  He saw her

again on April 26, 2006, due to complaints of increased pain.  (R. 178.)  He recommended

more changes in her medication, including additions of Zanaflex and Effexor, as well as

continued use of Avniza, Vicodin, and the Lidoderm patch.  On June 2, 2006, Dr. Chun

recommended that Plaintiff continue to take these medications, with the exception of the

Lidoderm patch, which was proving to be ineffective.  (R. 177.)  Throughout this period, Dr.

Chun maintained a "no work" status for Plaintiff until her pain was better controlled.  (R. 176-

83.)

        Plaintiff was once again hospitalized for an exacerbation of COPD with asthmatic

bronchitis on May 26, 2006.  She was treated, stabilized, and released on June 1, 2006.

(R. 254-91.)  Her course of treatment included long-acting morphine for chronic pain.  (R.

255.)

        Plaintiff reported to the Mid-Valley Hospital Emergency Room on June 21, 2006,

once again complaining of shortness of breath, along with swelling on her left lower

extremities.  (R. 242.)  After administration of prednisone, albuterol, and lasix, her condition

improved to the point that she was discharged later the same day.  (R. 246.)  A radiology

report of June 21, 2006, indicates bilateral apical pulmonary fibrosis was present.  (R. 247.)

        On July 19, 2006, Plaintiff completed a questionnaire, reporting the following

limitations: standing for only two to three minutes at a time, due to pain; walking for only

three to five minutes at a time; not being able to lift anything over five pounds, due to pain; and only being able to sit for ten minutes at a time, due to pain beginning at her spine and radiating to her sides.  (R. 83.)   To cook or wash dishes, Plaintiff indicated she must rest one elbow on the counter.  (Id.)  Plaintiff reported she could use "Swiffer" vacuuming tools, but that using a regular vacuum cleaner or mopping tools was too painful.  (R. 84.)  She also indicated she needed to lean on the shopping cart while at the grocery store, she could not properly make a bed, and that pain caused her to lie down several times throughout the course of a day.  (Id.)

On August 22, 2006, Plaintiff was hospitalized following a fall.  As a result of this fall, Plaintiff fractured her sternum.  (R. 301-03.)  The hospital records indicate that Plaintiff was taking Avinza twice daily, Zanaflex, three times a day, lasix, Advair Diskus, and Albuterol.  She was also on home oxygen at 2 liters.  (R. 301.)

Plaintiff's hearing in front of the ALJ took place on September 25, 2006.  At the hearing, Plaintiff testified that she had continuous lower back pain since her injury on December 11, 2004, and, as a result, had difficulty walking, standing, or sitting for more than a few minutes.  (R. 316.)  She testified that she experienced "pins and needles" when sitting at the computer for more than five minutes at a time.  (Id.)  Plaintiff also testified that she experienced intermittent spasms that "happen out of the blue" and caused severe pain, for which she takes Zanaflex.  (R. 314-15.)  Furthermore, Plaintiff testified that she must lie

down as many as two to three times a day, for fifteen minutes at a time, to alleviate her pain.  (R. 315-16.)  She testified that she remained under the care of Drs. Gillick and Chun, who prescribed Avinza (a synthetic morphine), Zanaflex, and Vicodin.  (R. 319.)  She explained that taking Vicodin along with Avinza made her "woozy" and adversely affected her concentration.  (R. 319.)

In addition to her back problems, Plaintiff testified about her COPD.  She explained that she used an oxygen tank to treat her breathing problems, along with Advair and Albuterol.  (R. 320-21.) Plaintiff had her oxygen supply with her at the hearing.  (R. 320.)

At the hearing, a vocational expert also gave testimony describing Plaintiff's past relevant work experience.  (R. 323.)  When asked whether Plaintiff could perform any of her past work, the record indicates an inaudible response from the vocational expert.  (Id.)  With regard to Plaintiff's need to lie down two to three times a day, for fifteen minutes at a time, the expert opined that Plaintiff would likely not be able to perform past work unless Plaintiff's need to lie down coincided with her scheduled breaks.  (Id.)  The expert's elaboration on Plaintiff's capabilities in light of this limitation is again noted as inaudible in the record.  (R. 324.)  The expert opined that Plaintiff would need "special accommodation[s]" in order to perform any relevant past work.  (Id.)

II.    STANDARD OF REVIEW

Where objections to the magistrates judge's report are filed, the court must perform a

13

de novo review of the contested portions of the report. See e.g., Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)).  Objections must be both timely and specific.  See, e.g., Goney v. Clark, 749 F.2d 5, 6-7 (3d Cir. 1984).  Upon review, the court may "accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).  See also, Local Rule of Court 72.3.  Although review is de novo, the court is permitted to "rely upon the magistrate judge's proposed findings and recommendations to the extent [it], in the exercise of sound discretion, deem[s] proper." Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980); Goney, 749 F.2d at 7 (3d Cir. 1984)).  Because the district judge retains "full authority" over the case at all time, uncontested portions of the report may be reviewed at a standard determined by the district court.  Thomas v. Arn, 474 U.S. 140, 154 (1985); see also Goney, 749 F.2d at 7. Uncontested portions should be reviewed, at the very least, using a standard of "clear error" or "manifest injustice."  See, e.g., Cruz v. Chater, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

When reviewing the denial of disability benefits, the court must deem conclusive the findings of the Social Security Administration if they are supported by substantial evidence. See, e.g., 42 U.S.C. § 405(g); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Substantial evidence is "more than a mere scintilla but may be somewhat less than a

preponderance of the evidence." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003)). According to this standard, a court should not set aside a decision if it is supported by substantial evidence, even if it would have decided a factual inquiry differently. See, e.g., Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

A single piece of evidence will not satisfy this substantial evidence standard if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). To facilitate review, the ALJ's determination must "contain findings of fact and a statement of reasons in support thereof." Cotter, 642 F.2d at 704. When there are conflicts in the evidence, the ALJ must indicate which evidence was accepted, which was rejected, and the reasons for rejecting that evidence. Id. at 706-07. To determine whether the ALJ's decision meets the substantial evidence standard, the court must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

III.    <u>DISCUSSION</u>

A. The ALJ Decision

An ALJ must perform a five-step analysis to determine whether or not a claimant is disabled under the Act, and thus entitled to benefits.[1]   The ALJ must sequentially determine: (1) whether the applicant is engaged in a substantial activity; (2) whether the applicant is severely impaired; (3) whether the applicant's impairment matches or equals the requirements of one of the listed impairments; (4) whether the impairment prevents the applicant from doing past relevant work; and (5) whether the impairment prevents the applicant from doing any other work.  20 C.F.R. § 404.1520.  Before considering the fourth step of the evaluation process, the ALJ must first determine the applicant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  An applicant's RFC is her ability to do physical or mental work activities on a sustained basis despite limitations from her impairments.  In determining an applicant's RFC, the ALJ must consider all the claimant's impairments, including those not deemed severe.  20 C.F.R. § 404.1520(e) and § 404.1545.

---

[1]Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Furthermore, an individual is disabled only if her physical or mental impairment is so severe that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

At step one of the evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 11, 2004, the alleged onset date of Plaintiff's injuries.  (R. 14.)  Evaluating Plaintiff's alleged impairments at the second step of the process, the ALJ concluded Plaintiff suffers from post-thoracic compression fracture with intermittent spasms, a back disorder, and COPD, which are considered "severe" impairments under the Act because they cause significant limitations in the Plaintiff's ability to perform basic work activity.  20 C.F.R. § 404.1520(c).  (Id.)

At the third step of the evaluation process, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments under the Act.  20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(d), 404.1525 and 404.1526.

At the interim step of determining Plaintiff's RFC, the ALJ concluded, upon "careful consideration of the entire record," that Plaintiff retained the RFC to perform a "significant amount of work at the sedentary level of exertion," with the stipulation that Plaintiff should be allowed a sit/stand option and the opportunity to change positions every fifteen minutes.  (Id.)  Additional conditions included no concentrated exposure to extreme temperatures and humidity, repetitive climbing, fumes, odors, or hazardous machinery.  The ALJ indicated that, in making this finding, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence

and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p, 96-7p." (R. 19.)  Upon completion of this review, the ALJ ultimately determined that "the claimant's assertions of debilitating pain and discomfort" were "not consistent with the medical evidence of record." (Id.)  The ALJ elaborated that "when considering the claimant's wide variety of daily activities, positive reports from her treating physician, admittance that she felt better after treatment, and the use of pain medications only on an as needed basis, disability could hardly be found on her alleged pain alone."[2]  (Id.)  Furthermore, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Id.)  In support of this finding, the ALJ observed that Plaintiff sat through the forty-five minute hearing "displaying minimal discomfort." (Id.)[3]

At step four, the ALJ ended the evaluation by concluding that Plaintiff retained the RFC to perform the requirements of her past relevant work as a billing and accounts receivable clerk. (R. 19.)  The ALJ indicated in his decision that he relied on the vocational

---

[2]The reference to "positive reports from her treating physician" apparently means Dr. Gillick's statement in August of 2005 that Plaintiff was then "still pretty much at a sedentary level of activity," (R. 157), which the ALJ had characterized as Dr. Gillick stating that Plaintiff "was limited to work at a sedentary level of exertion." (R. 17.)  The ALJ later characterized Dr. Gillick's observation that Plaintiff was at a "sedentary level of activity" as an affirmative pronouncement that "she could perform work at the sedentary level of exertion." (R. 19.)

[3]The transcript of the hearing indicates that the hearing lasted less than 30 minutes, commencing at 10:00 a.m. and concluding at 10:27 a.m. (R. 307, 325.)

expert's testimony that Plaintiff's past employment qualified as skilled/semi-skilled and required either a "light" level of exertion (Plaintiff's positions as an imaging specialist, cashier, and medical aide) or a "sedentary" level of exertion (Plaintiff's position as a billing and accounts receivable clerk).  (R. 19-20.)  According to the ALJ, a comparison of Plaintiff's RFC and the physical and mental demands of her past position as a billing and accounts receivable clerk led to the conclusion that Plaintiff was able to perform this work as "actually and generally performed."  (R. 20.)  Based on these findings of fact, the ALJ ultimately determined that Plaintiff had not been under a "disability" as defined by the Act, from December 11, 2004, through the date of his decision, October 24, 2006.  (Id.)

    B.  Plaintiff's Objections to Magistrate Judge Mannion's Report and
        Recommendation

        1.  General Objections I-III, V, VI

    Several of Plaintiff's objections raise general concerns.  Plaintiff's first three objections allege, in general, that Magistrate Judge Mannion committed reversible error.  In Objection I, Plaintiff asserts that Magistrate Judge Mannion committed reversible error by "simply rubber stamping" the ALJ's decision.  (Pl.'s Obj. 1.)  In Objection II, Plaintiff argues that the Magistrate Judge committed reversible error "by failing to conduct a meaningful analysis of the evidence of record as a whole."  (Id.)  In Objection III, Plaintiff generally claims that the Magistrate Judge committed reversible error "in finding that the substantial competent evidence of record established that the Plaintiff is capable of performing

19

sedentary work activity." (Pl.'s Obj. 2.)  Plaintiff's Fifth Objection asserts that both the ALJ and the Magistrate Judge ignored the Social Security Act's role as a remedial statute, designed to help "individuals such as this frail, underweight, sixty-two year old woman who is severely limited by her orthopedic and pulmonary difficulties." (Pl.'s Obj. 4.)  In Objection VI, Plaintiff argues that the ALJ and the Magistrate Judge generally "ignored the substantial competent evidence of record that clearly establishes, not only through the Plaintiff's testimony, but also the evidence of record from her treating physicians, that the Plaintiff is not capable of performing any type of substantial gainful activity on a sustained basis." (Id.)

As noted above, a plaintiff's objections to a Magistrate's Report and Recommendation require de novo review only if they are both timely and specific.  See, e.g., Goney v. Clark, 749 F.2d 5, 6-7 (3d Cir. 1984).  Here, the objections are timely filed,[4] but these general objections do not meet the required standard of specificity for de novo review.  Plaintiff's one-sentence "arguments" in Objections I-III, V, and VI do not discuss the legal significance of these objections, present any legal authority, or offer any analysis whatsoever.  See, e.g., Zucker v. Astrue, No. 3:07-CV-710, 2008 WL 2264097, at

---

[4]Pursuant to Local Rule of Court 72.2, any party may object to a Magistrate Judge's report and recommendation within ten (10) days of being served with a copy thereof. Plaintiff filed a Motion to enlarge the time within which she was allowed to object to Judge Mannion's Report and Recommendation, dated February 19, 2008, because Plaintiff avers she did not receive the Report until February 29, 2008.  (Pl.'s Motion, Dkt. Entry 15.) Plaintiff's Motion was granted by Order dated March 3, 2008, (Dkt. Entry 16), and Plaintiff's Objection was filed March 6, 2008.  (Dkt. Entry 17.)

*3 (M.D. Pa. May 30, 2008).   In any event, Plaintiff's sweeping arguments made in

Objections I, II, III, V, and VI, are more or less covered by the more detailed objections

voiced in Objection IV (A)-(I), which, because they contain the required degree of specificity,

trigger the de novo standard of review.

### 2.   Objections IV(A), (B), (D) - Plaintiff's Testimony

In Objections IV(A), (B), and (D), Plaintiff argues that the ALJ's credibility

determination of her is not supported by substantial evidence.  Essentially, Plaintiff argues

that, in light of the consistency of her testimony regarding her impairments, there is not

substantial evidence to support the ALJ's determination that she was less than fully

credible.  Plaintiff also maintains, in Objection IV(B), that her testimony regarding her

subjective pain and limitations caused by her compression fractures, lumbar spine disorder,

and COPD is consistent with the medical evidence of record.  In Objection IV(D), Plaintiff

argues that both the ALJ and the Magistrate mischaracterized her responses to two

questionnaires and testimony given at the administrative hearing describing her limitations.

The Commissioner argues that Plaintiff's allegations of "totally disabling limitations

and pain" were (1) inconsistent with the weight of the objective evidence; (2) inconsistent

with Plaintiff's testimony regarding her activities; (3) inconsistent with Dr. Gillick's opinion

"which reflected that Plaintiff could perform sedentary work activity"; and (4) inconsistent

with Dr. Ryzcak's finding that Plaintiff possessed the RFC to perform a light range of work.

21

The Commissioner further argues that Plaintiff's indication on her questionnaires that she could only sit for fifteen to twenty minutes at a time was inconsistent with the fact that Plaintiff remained seated throughout the entire administrative hearing.

"When making credibility findings, the ALJ must indicate which evidence he rejects and which he relies upon as the basis for his findings." Garrett v. Commissioner of Social Security, 274 F. App'x 159, 164 (3d Cir. 2008) (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999)). A "single, conclusory statement" that the allegations are not credible will not be sufficient to fulfill this obligation. SSR 96-7p, 1996 WL 374186. The ALJ's credibility findings, like other factual findings, should not be disturbed on appeal if supported by substantial evidence. See, e.g., Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).

Evaluating a claimant's symptoms and assessing her credibility is a two-step process: (1) the ALJ must decide if the medical evidence establishes the existence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged; and (2) the ALJ must evaluate their intensity and persistence and their effect on the claimant's capacity to work, in light of the entire record. 20 C.F.R. §§ 404.1529(c)(1)-(3). As the Third Circuit indicated, "[t]his obviously requires the administrative law judge to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Hartranft v. Apfel, 181

F.3d 358, 362 (3d Cir. 1999).  Factors to consider in assessing a claimant's credibility, in addition to the objective medical evidence, include (1) the individual's daily activities; (2) location, duration, frequency, and intensity of the individual's pain; (3) aggravating factors; (4) medication and any side effects; (5) treatment for pain; and (6) any other measures taken to alleviate pain.  20 C.F.R. § 404.1529(c); § 416.929(c).  Additionally, the regulations note that "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, 1996 WL 374186, at *5.  Furthermore, in instances where the ALJ has observed the individual at hearing, the ALJ "is not free to accept or reject the individual's complaints solely on the basis of [ ] personal observations, but should consider any personal observations in the overall evaluation of the credibility of the individual's statements."  Id. at *8.

The ALJ found that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (R. 19.)  It appears from the record that the ALJ adequately indicated what he relied on in making his credibility determinations: "conservative treatment" Plaintiff received for her back pain, reported improvement in pain, and, especially, Plaintiff's testimony regarding her ability to perform daily household tasks and activities.  (Id.)

A review of the factors enumerated in the regulations suggests that the ALJ's

determination about Plaintiff's credibility is not supported by substantial evidence.  Though

Plaintiff did testify she could perform many daily activities such as cooking, cleaning, and

grocery shopping, she consistently maintained that her ability to perform these activities

was limited.  (R. 63-69; 314-20.)   For example, Plaintiff testified she can only perform

household tasks for fifteen minutes at a time, (R. 65), that she cannot lift the corners of a

mattress to change the bed, (R. 66), that she needs to lean on one elbow on the counter

while cooking, (R. 64), and that she cannot take out the trash.  (Id.)  Plaintiff's testimony as

to these limitations is consistent with her statements throughout the entirety of these

proceedings.

The record indicates that Plaintiff has consistently complained of "severe back pain,"

(R. 63, 65, 67,70, 74, 83, 88, 91, 114-17, 124-31, 157-62, 176-91), and has received

ongoing and protracted treatment for her pain, including several sessions of acupuncture,

(R. 167-75), an unsuccessful spinal injection, (R. 163), and increasingly strong pain

medication, (R. 68, 73, 86, 88, 91, 109, 201-04, 221, 223, 225).  And while the ALJ attached

significance to the fact that Plaintiff took "pain medication only on an as needed basis," he

failed to mention the fact that "as needed" meant use two to three times each day of a

synthetic morphine (Avinza), Zanaflex, and Vicodin.  Avinza is indicated "for the relief of

moderate to severe pain requiring continuous around-the-clock opioid therapy for an

extended period of time."  (RxList, Avinza, http://www.rxlist.com/cgi/generic/avinza.htm (last

visited Sept. 4, 2008)).  Zanaflex is a brief acting medication that is intended to relieve

spasms by blocking nerve impulses.  It is to be taken only when relief from spasms is

necessary.  (Drugs.com, Zanaflex, http://www.drugs.com/Zanaflex.html (last visited Sept. 4,

2008)).  Vicodin is a narcotic analgesic for relief of moderate to severe pain.  (Drugs.com,

Vicodin, http://www.drugs.com/pdr/vicodin.html (last visited Sept. 4, 2008)).  Contrary to the

ALJ's view, Plaintiffs's use of these medications serves to confirm her articulated

complaints.

Although the ALJ indicated that Plaintiff displayed "minimal discomfort" throughout

the administrative hearing, the regulations state that the ALJ's personal observations are

not dispositive and must be evaluated in light of all of the evidence of record.  SSR 96-7p,

1996 WL 374186, at *8.  Moreover, as noted above, it appears that it was the ALJ who

exaggerated the duration of the hearing to buttress his conclusion.

Courts have afforded "great weight and deference" to the credibility determinations of

ALJs, since it is their "duty" to observe a claimant's demeanor and credibility.  See, e.g.,

Van Alst-Smith v. Astrue, No. 07-CV-1663, 2008 WL 2622903 (M.D. Pa. June 27, 2008).  In

this case, however, the ALJ gave insufficient weight to the myriad of factors the regulations

direct he consider, most notably the consistency of Plaintiff's testimony as to her limitations.

Additionally, it does not appear the ALJ gave any weight to Plaintiff's consistent use of

increasingly strong pain medication, the acupuncture and spinal injection treatment Plaintiff

received, and her pursuit of psychological care.  Furthermore, it appears that the ALJ may have relied too heavily on his personal observations of Plaintiff at the administrative hearing, which the regulations specifically admonish an ALJ to refrain from doing.

### 3.  Objections IV(E) -(H) - Dr. Gillick's Statements and Plaintiff's RFC

Plaintiff maintains that the ALJ's decision misconstrued Dr. Gillick's opinion regarding Plaintiff's ability to sustain substantial gainful activity. Plaintiff asserts that careful consideration of the record discloses that Dr. Gillick did not opine that Plaintiff was capable of sedentary work.

The statements in question are taken from Dr. Gillick's notations following Plaintiff's August 8, 2005, appointment.  (R. 157.)  In relevant part, Dr. Gillick writes: "I do not think she can yet return to work.  She is still pretty much at a sedentary level of activity."  (Id.)  In his decision, the ALJ refers to this statement twice.  First the ALJ writes, "Dr. Gillick stated that the claimant could not return to work, as she was limited to work at a sedentary level of exertion."  (R. 17; emphasis added.)   In a subsequent section of his decision, the ALJ writes, "her treating physician indicated that she could perform work at the sedentary level of exertion."  (R. 19; emphasis added.)  Presumably, the "treating physician" referred to is Dr. Gillick.

The ALJ's interpretation of Dr. Gillick's statements is unreasonable and not supported by substantial evidence. "Sedentary level of activity" is not the same as "work at

the sedentary level of exertion." Furthermore, though the ALJ initially recognizes that Dr. Gillick stated Plaintiff could not yet return to work, at a subsequent section of his decision, he construes Dr. Gillick's statements as saying Plaintiff "could perform work at the sedentary level of exertion." This is an unreasonable interpretation of Dr. Gillick's statements. It directly conflicts with Dr. Gillick's opinion that Plaintiff cannot "yet return to work," (R. 157), and is, therefore, not supported by substantial evidence.

Furthermore, the ALJ's decision ignores completely the opinions of Plaintiff's treating physiatrist, Dr. Chun. He consistently placed Plaintiff in "no work" status. An ALJ decision that fails to recognize and reconcile evidence of disability from a treating physician is not supported by substantial evidence. See Fargnoli v. Massanari, 247 F.3d 34, 43-44 (3d Cir. 2001); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

### 4. Hypothetical to Vocational Expert

In Objection IV(C), Plaintiff argues that substantial evidence establishes that Plaintiff required multiple hospitalizations for her COPD, causing further limitations, including the need for an oxygen tank. (Pl.'s Obj. 3.) Furthermore, in Objection IV(I), Plaintiff argues that the ALJ failed to consider these pulmonary difficulties in his hypothetical to the vocational expert (VE), which did not take into account the multiple exacerbations of Plaintiff's COPD for which Plaintiff was hospitalized four (4) times in less th an two (2) years, or Plaintiff's need for an oxygen tank. Defendant agrees that the record reflects these hospitalizations

for COPD, but notes that "on each occasion, her condition improved and she was discharged home in stable condition" and that "the record does <u>not</u> show that Plaintiff received regular treatment from a pulmonary specialist, participated in a pulmonary rehabilitation program, used oxygen during medical appointments, or reported significant breathing difficulties during medical appointments."  (Def.'s Mem. 5, emphasis in original.)

As the Third Circuit has explained, "'[a] hypothetical question must reflect <u>all</u> of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence.'" <u>Ramirez v. Barnhart</u>, 372 F.3d 546, 552 (3d Cir. 2004) (emphasis in original) (quoting <u>Chrupcala v. Heckler</u>, 829 F.2d 1269, 1276 (3d Cir. 1987)).  An ALJ, however, is not required "to submit to the vocational expert every impairment <u>alleged</u> by the claimant," rather "the ALJ must accurately convey to the vocational expert all of a claimant's <u>credibly established limitations</u>." <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 554 (3d Cir. 1987) (emphasis in original). "Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." <u>Burns v. Barnhart</u>, 312 F.3d 113, 123 (3d Cir. 2002) (citing <u>Podedworny v. Harris</u>, 745 F.2d 210, 218 (3d Cir. 1984)).

The record of the administrative hearing indicates that the ALJ asked the VE whether Plaintiff, "with those limits," could perform any of her past work.  (R. 323.)  At no point in his

questions to the VE does the ALJ enumerate what "those limits" encompass, though he asks the VE to consider Plaintiff's testimony "that she needs to lie down two or three times a day, 15 to 20 minutes to relieve pain."  (Id.)[5]  The focus of his brief questioning to the VE appears limited to ascertaining Plaintiff's ability to perform her past relevant work in light of her back pain, and there is no indication that the ALJ directed the VE to additionally consider Plaintiff's COPD.  (R. 323-24.)  Plaintiff's COPD, her hospitalizations due to exacerbation of this condition, and her use of oxygen are all impairments supported by the objective medical evidence of record.   Though the ALJ's decision indicates that he found Plaintiff's subjective testimony about her back pain and the limitations it caused only partially credible, at no point does the ALJ indicate any lack of credibility as to Plaintiff's COPD and breathing problems.  Plaintiff's pulmonary impairments are medically supported and uncontradicted.

The ALJ did not include, either explicitly or implicitly, Plaintiff's pulmonary and breathing impairments in his hypothetical to the VE.  Plaintiff's COPD and related impairment are "credibly established limitations," Rutherford, 399 F.3d at 554, and because they are not included in the ALJ's hypothetical to the VE, the expert's answer cannot be

---

[5]Notably, the VE testified that Plaintiff could maintain substantial gainful activity only if Plaintiff's scheduled breaks coincided with her need to lie down.  (R. 323.)  It is also noteworthy that the ALJ made no credibility determination with respect to Plaintiff's testimony that she frequently obtained relief only by lying down.

considered substantial evidence.  Ramirez, 372 F.3d at 552.

III.    CONCLUSION

De novo review of the record discloses that the ALJ's credibility assessment is not supported by substantial evidence.  It is also apparent that the ALJ gave critical weight to a characterization of Dr. Gillick's office note that is not supported by the record.  At best, the record discloses no opinion by Dr. Gillick as to Plaintiff's ability to work at a sedentary level. Furthermore, the ALJ's rationale fails to mention the consistent opinions of Dr. Chun. Finally, the hypothetical to the VE fails to address limitations imposed by Plaintiff's COPD.

A district court may, under 42 U.S.C. §405(g), affirm, modify or reverse an ALJ's decision with or without remand to the Commissioner for rehearing.  A decision to direct the award or benefits, however, is to be made only when the administrative record has been fully developed and when substantial evidence on the record as a whole indicates the claimant is disabled.  See Newell v. Commissioner of Social Security, 347 F.3d 541, 549 (3d Cir. 2003).

In this case, it cannot be said that the record is fully developed.  The ALJ's hypothetical was incomplete.  He did not assess the opinions of Dr. Chun.  His characterization of Dr. Gillick's opinion is not sustainable.  Under these circumstances, remand to allow the Commissioner to consider these matters in the first instance is warranted.  See Poulus v. Commissioner of Social Security, 474 F.3d 88, 94-95 (3d Cir.

2007); <u>Fargnoli</u>, 247 F.3d at 44.

An appropriate Order follows.[6]

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

---

[6]This remand is made pursuant to the fourth sentence of 42 U.S.C. § 405(g). Accordingly, the Clerk of Court will be directed to enter judgment in accordance with this Memorandum.  <u>See</u> <u>Kadelski v. Sullivan</u>, 30 F.3d 399 (3d Cir. 1994).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROSEMARY SHIELDS,                           :
                                            :
                Plaintiff                   :      No. 3: CV-07-417
                                            :
                v.                          :      (Vanaskie, J.)
                                            :
MICHAEL J. ASTRUE,                          :
Commissioner of Social Security,            :
                                            :
                Defendant                   :

## ORDER

NOW, THIS 5th DAY OF SEPTEMBER, 2008, for the reasons set forth in the

foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1.  This matter is remanded to the Commissioner for proceedings consistent with the

foregoing Memorandum.

2.  The Clerk of Court is directed to enter judgment in accordance with the foregoing

Memorandum.

3.  The Clerk of Court is further directed to mark this matter in this Court CLOSED.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge